The judgment of the court was pronounced by
Preston, J.
The defendant being a foreigner, and subject of the Queen of Spain, asked for a trial by a jury de mediatate linguce, selected as provided by the common law of England. The privilege of a foreigner in England to demand a trial by a jury composed one-half of aliens, has generally been referred to the statute of 28th Edward III., chap. 13, sec. 2. But, as observed by the counsel of the accused, the statute was, no doubt, declaratory of the common law of England; and that the right was established by some of the conquerors of England, on account of the great numbers of foreigners, which the successful invasions by the Normans, or perhaps even the Danes and Norwegians, introduced into the country.
*428 To show how little the privilege was favored at a later period, of the English history, when the statute of Edward was passed, it was regarded as a statutory right, and the trial by natives and denizens, the common law trial. And when, two hundred years afterwards, the statute of the 1st and 2d Phillip and Mary, chap. 10, required that trials for treason should be according to the common law, it was held to repeal the statute of Edward the Third, as to trials for treason. 2 Hale, P. C. 251. 2 Hawk. 420.
For the same reason, it may fairly be considered, that our statutes, directing specially how all juries shall be composed, and enumerating their qualifications, and especially that the lawful juror shall be a citizen of the State, have abolished the right to a jury, de mediatate lingua, if it ever existed in Louisiana. The right had fallen almost into disuse in England, before our revolution, and has hardly been claimed or allowed in any of the States of the Union, although the statute of Edward III. remained nominally in force, after the revolution. In Pennsylvania., the privilege has been allowed in but two instances. See the case of Respublica against Mesca and others, 1 Dallas, 73.
In New York, it yyas allowed in the single case of The People against McClean, 2 Johns. New York Rep. 381, and was there abolished by statute. 2 Revised Statute, 734. In the case of The Stale of North Carolina against Antonio, it was held, that the prisoner was not entitled to the privilege.
No such jury is allowed in Massachusetts. 7 Davis Abpdg. 331. And we do not find that the privilege has been allowed in any other State. A jury de mediatate lingua, has never been granted in Louisiana. Indeed, we have legislative provisions which supersede its necessity. The courts are bound to assign counsel to foreigners tried before them, whose services it would only embarrass ; our laws also provide for them interpreters ; and the supposition of prejudice against them in a jury drawn by lot, is entirely unfounded. We do not think that the introduction of the trial, per mediapaiem lingua, even if it could be legally done, would contribute at all to the advancement of justice; but, on the .contrary, that it would impede and embarrass its administration. It is also to be considered, that it is a privilege which a citizen of Louisiana could not reciprocally enjoy in Spain, or perhaps in any other country except in the British dominions. It would be a humiliating spectacle to see aliens forming a competent part of our tribunals, and administering our justice, while Louisianians, were not allowed the same right in their country. The application for a jury de mediatate lingua, was, therefore, properly refused.
The counsel of the prisoner requested the court to charge the jury, “ that the use of grossly insulting and indecent language by a free man of color to a white man, naturally must excite the passions of a white man, and if immediately succeeded by a mortal stab, it may well be imputed to the weakness and infirmity of human nature, and a jury may render a verdict of manslaughter if they so find the fact.” The court declined so to charge the jury, and we think properly.
It is one of the first and most familiar principles in trials for homicide “that no affront by words or gestures only is a sufficient provocation so as to excuse or extenuate such acts of violence, as manifestly endanger the life of another.” 4 Black Qom. 200.. The law lias made no distinction whether the affront proceeds from a white, or a free man of color. Indeed, as was well observed by the attorney general, since the law makes a distinction between white and free colored men, as to their condition, and punishes free persons of color, who, even by words, insult white persons, their situation imposes upon us, perhaps, a higher *429 obligation to suppress our passions, and resort to the laws to punish their insolence, than in the case of white persons, against whose insolence and verbal outrage there is no redress by prosecution.
It is truly a painful duty to perform when the life of a fellow-creature is involved, but we are obliged to affirm the judgment of the district court, with costs.